**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

RONALD J. CAMPBELL, JR., and :
KRISTIE CAMPBELL, :
:
       Plaintiffs, :
: CIVIL ACTION NO.
v. : 1:08-CV-0810-JOF
:
ALTEC INDUSTRIES, INC., et al., :
:
       Defendants. :

## **OPINION AND ORDER**

The instant matter is before the court on Defendants Altec Industries, Inc. ("Altec") and Texas Hydraulics, Inc.'s ("THI") Motion for Partial Summary Judgment [29].

**I.    Background**

The instant matter is a products liability suit arising out of the injury of Plaintiff Ronald Campbell which occurred when the lower boom lift cylinder on the Georgia Power Company A77-T bucket truck he was working in malfunctioned. Plaintiff filed suit in the State Court of Gwinnett County on February 4, 2008, and Defendants removed. Defendants filed the instant motion for partial summary judgment on August 7, 2008. Defendants contend that Plaintiffs' claims for strict liability or negligent design, manufacture, and assembly are barred as a matter of law by the ten-year statute of repose in O.C.G.A. § 51-1-

11. Defendants concede that to the extent Plaintiffs have alleged a negligent failure to warn claim, such a claim is not barred.

In March 1997 Georgia Power Company ordered the relevant bucket truck unit from Altec, and Altec began the process of fulfilling the order. In early October of 1997 Altec purchased a lower boom lift cylinder from THI to install on the bucket truck, and by October 10, 1997, THI had shipped the lower boom lift cylinder to an Altec facility in Saint Joseph, Missouri. By January 2, 1998, Altec had installed the lower boom lift cylinder onto the lift portion of the bucket truck. On January 14, 1998, Altec installed the lift portion of the bucket truck including the lower boom lift cylinder on a test chassis. Altec performed several tests with the test chassis including operating the lower boom lift cylinder and lift as it would be used in the field. Altec then shipped the entire lift portion of the bucket truck to a Birmingham, Alabama facility where it was attached to the permanent chassis in March 1998. Altec delivered the completed bucket truck to Georgia Power Company in April 1998.

## II. Discussion

Summary judgment in favor of a defendant is warranted when the information before the court shows that there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Georgia law states in part:

> (b)(1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort,

2

> irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.
> (2) No action shall be commenced pursuant to this subsection with *respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.*
> . . . .
> (c) The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

O.C.G.A. § 51-1-11 (emphasis added).

The issue before this court is the meaning of "the date of the first sale for use or consumption of the personal property causing or otherwise bringing about injury." Georgia courts first directly construed this phrase in *Thorpe v. Robert Bullock, Inc.*, 179 Ga. App. 867 (1986). There, a plaintiff was badly burned when boiling oil from an automatic deep fryer spilled on him. 179 Ga. at 867. The plaintiff's employer had obtained the deep fryer from its manufacturer for free on a trial basis as an inducement to purchase it. *Id.* After examining the purpose of O.C.G.A. § 51-1-11 and cases from other jurisdictions, the court found that "a technical and complete sales transaction . . . is not the only commercial

3

transaction which comes within the purview of the rule of [section 51-1-11]," and the statute of repose begins to run when a product is placed "in the stream of commerce." *Id.* at 871. The court held that the fryer was placed "in the stream of commerce" when it was placed in the hands of a consumer, the plaintiff's employer. *Id.* at 872.

This court further examined the relevant phrase in *Davis v. Brunswick Corporation*, 854 F. Supp. 1574 (N.D. Ga. 1994) (Forrester, J.), overruled on other grounds, *Lewis v. Brunswick Corp.*, 107 F.3d 1494 (11th Cir. 1997), when it was called to determine whether a defective product can enter the stream of commerce before it is sold to its ultimate consumer. There, a plaintiff alleged that her injury on July 16, 1989, was caused by the engine and out-drive of a used boat. 854 F. Supp. at 1583. The company that manufactured the engine sold it to the boat manufacturer on June 9, 1981, and the boat manufacturer installed it in the boat and sold the boat sometime prior to July 4, 1981. *Id.* The boat was registered to its first owner in July 1981. *Id.* This court found that the statute of repose began to run on June 9, 1981, when the engine manufacturer put the engine into the stream of commerce by selling it to the boat manufacturer rather than on some later date in June or July 1981, when the first owner bought and took possession of the boat. *Id.* at 1585.

The Georgia Supreme Court first addressed the meaning of "first sale for use or consumption" in *Pafford v. Biomet*, 264 Ga. 540 (1994). In *Pafford* a plaintiff alleged injury from a defective metal plate placed in his back. 264 Ga. at 541. The defendant argued that

4

the statute of repose began to run at "the first sale" or when the hospital purchased the metal plate from its manufacturer, while the plaintiff contended that the statute of repose did not begin to run until the plate was first "use[d] or consum[ed]" or when the hospital installed the plate in the plaintiff. The court found that the phrase "first sale for use or consumption" must be construed in light of the concepts of "use" and "consumption" and that the plate was not used or consumed when the hospital, acting as a dealer, purchased it for "mere static retention in its inventory." *Id.* at 542-43. "[T]he Hospital was not functioning as an active 'user or consumer' thereof, but only as 'a dealer or any other person' through whom the plate would ultimately be sold for its intended purpose of placement in the back of a patient." *Johnson*, 281 Ga. App. at 169.

The only Georgia case directly addressing this issue in the wake of *Pafford* is *Johnson v. Ford Motor Co.*, 281 Ga. App. 166 (2006). In *Johnson*, a plaintiff alleged an injury due to a faulty speed control deactivation switch installed in a car. 281 Ga. App. at 166. The court addressed whether the statute of repose began to run on the date the car was assembled and the faulty speed control installed or on the date that the car was purchased. The court found that the statute of repose began to run when the car manufacturer installed the switch in the car and the car became operable. *Id.* at 171. The court distinguished *Pafford* because the switch in question "was not retained as part of the car manufacturer's inventory but was placed immediately in another component and then incorporated into the

5

[car] on the assembly line." *Id.* at 170. When the car manufacturer installed the switch in the car and the car became operable, the switch "was being used for its intended purpose." *Id.* at 171. The court in *Johnson* wanted its decision to serve the purposes of both the statute creating liability for defective products and the statute of repose. *Id.* at 170. It intended to serve the former by extending protection to those individuals who might be trying out a new product before purchasing it, and it intended to serve the latter by limiting manufacturers' liability to a period of ten years following the time their product was first actively used. *Id.*

Reading the holdings of *Davis*, *Pafford*, and *Johnson* in conjunction, this court finds that the statute of repose in O.C.G.A. § 51-1-11 begins to run once an allegedly faulty product is (1) sold or placed in the stream of commerce, (2) to an individual or entity that plans to use or consume it for its intended purpose in the near future, and (3) is not a mere dealer who plans to retain it in inventory to be used at a later time.

Here, it is undisputed that THI placed the lower boom lift cylinder into the stream of commerce in October 1997 when it sent the cylinder to Altec. Further, it appears clear to the court that Altec used the lower boom lift cylinder for its intended purpose on January 14, 1998 when Altec performed several tests on the fully completed lift portion of the A77-T bucket truck using a test chassis (rather than the truck chassis to which the lift portion would ultimately be attached) including operating the lower boom lift cylinder and lift as it would be used in the field. Lastly, Altec ordered the lower boom lift cylinder from THI to fulfill

6

the Georgia Power Company's A77-T bucket truck order, and Altec began the process of installing the cylinder as part of a fully functioning lift mechanism and a complete bucket truck almost as soon as it received the cylinder from THI. Altec had no intention of holding the cylinder in inventory for later re-sale. Based on this analysis, the ten-year statute of repose in O.C.G.A. § 51-1-11 began on January 14, 1998, ten years and roughly twenty-one days before Plaintiffs filed the instant suit.

Plaintiffs rely on the language in *Johnson* that "the statute of repose began to run when [the car manufacturer] installed the switch in the car *and the car became operable*" to argue that the statue of repose under section 51-1-11 cannot begin until the entire product is complete and here did not begin until the entire A77-T bucket truck was complete in March 1998. 281 Ga. App. at 171 (emphasis added). The court is not persuaded by this language. A speed control deactivation switch cannot function in its intended manner until the vehicle which it is designed to control is operable, or capable of having a speed. In contrast, a lower boom lift cylinder can operate as it is intended in a lift even though that lift is attached to a stationary test chassis rather than a mobile truck chassis. The truck chassis merely serves to make the lift portable; it does not impact the ability to "lift." Plaintiff also relies heavily upon the fact that Georgia Power Company ordered a complete bucket truck, rather than only a functioning lift system, from Altec and the fact that the lift system could not lift an individual into the air *in the field* until it was attached to a truck chassis in March

7

of 1998. The court finds these facts to be irrelevant. Plaintiff alleges that the lower lift boom cylinder was defective. Thus, the relevant inquiry is not when the bucket truck ultimately entered the stream of commerce or whether it was operating as it was intended but rather the movement and function of the lift.

**III.    Conclusion**

Defendants' Motion for Partial Summary Judgment [29] is GRANTED. The only claims remaining before the court are Plaintiffs' failure to warn claims which are not subject to the ten-year statute of repose under O.C.G.A. § 51-1-11. The court DIRECTS the parties to complete discovery as to this claim and file as appropriate a motion for summary judgment or a pretrial order.

**IT IS SO ORDERED** this 19th day of February 2009.

                                              s/ J. Owen Forrester
                                              J. OWEN FORRESTER
                       SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)