IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONALD J. CAMPBELL, JR., and
KRISTIE CAMPBELL,

      Plaintiffs,

    v.

ALTEC INDUSTRIES, INC., et al.,

      Defendants.

CIVIL ACTION NO.
1:08-CV-0810-JOF

## OPINION AND ORDER

The instant matter is before the court on Plaintiffs' Motion for Entry of Judgment under Rule 54(b) [58], Motion for Leave to File Motion for Reconsideration [61], and Motion to Amend Complaint and First Amended Complaint so as to Withdraw Failure to Warn Claims [64].

**I. Background**

On June 30, 2006, Plaintiff Ronald Campbell suffered an injury while using an A77-T bucket truck owned by Georgia Power Company and manufactured, assembled, and distributed by Defendant Altec Industries, Inc. ("Altec"). The instant matter is a products liability suit arising as a result of that injury. Plaintiff contends that the injury occurred because the threaded joint of the truck's lower boom lift cylinder manufactured by

Defendant Texas Hydraulics, Inc. ("THI"), separated while Plaintiff was elevated in the air causing the truck's bucket to fall. Plaintiff maintains that the cylinder was designed and developed jointly by THI and Altec. Plaintiff filed strict liability claims based on negligent manufacture and design and a claim for failure to warn against THI and Altec on February 4, 2008. On August 7, 2008, Defendants filed a Joint Motion for Partial Summary Judgment. Defendants argued that Plaintiffs' strict liability and negligence claims were barred by the ten-year statute of repose in O.C.G.A. § 51-1-11(b), which states:

> (1) The manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.
> (2) No action shall be commenced pursuant to this subsection with respect to an injury *after ten years from the date of the first sale for use or consumption of the personal property* causing or otherwise bringing about the injury . . . .

(Emphasis added). In order to determine the "date of the first sale for use or consumption of the personal property," the court examined the history of the A77-T bucket truck carrying Plaintiff and the lower boom lift cylinder contained within its lifting mechanism.

Georgia Power Company ordered the relevant bucket truck unit from Altec in March 1997, and Altec began the process of fulfilling the order by ordering a lower boom lift cylinder from THI. THI manufactured the cylinder in September 1997 and shipped it to Altec's facility in St. Joseph, Missouri no later than October 10, 1997. By January 2, 1998,

Altec had installed the lower boom lift cylinder onto the lift portion of the bucket truck. On January 14, 1998, Altec installed the fully completed lift portion of the bucket truck, including the lower boom lift cylinder, on a test chassis. Altec performed several tests with the test chassis including operating the lower boom lift cylinder and lift as it would be used in the field. Altec then invoiced/sold and shipped the entire lift portion of the bucket truck to a Birmingham, Alabama facility where it was attached to the permanent vehicle chassis in March 1998. Altec delivered the completed bucket truck to Georgia Power Company in April 1998. In order for Plaintiffs' claim to fall inside the statute of repose, "the date of first sale for use or consumption of the personal property" must have been no earlier than February 4, 1998.

This court issued an order on February 19, 2009, granting Defendants' Motion for Partial Summary Judgment. The court read the holdings in *Pafford v. Biomet*, 264 Ga. 540 (1994), *Johnson v. Ford Motor Company*, 281 Ga. App. 166 (2006), and *Davis v. Brunswick Corporation*, 854 F. Supp. 1574 (N.D. Ga. 1994) (Forrester, J.), in conjunction and found that "the statute of repose in O.C.G.A. § 51-1-11 begins to run once an allegedly faulty product is (1) sold or placed in the stream of commerce, (2) to an individual or entity that plans to use or consume it for its intended purpose in the near future, and (3) is not a mere dealer who plans to retain it in inventory to be used at a later time." (Order at 6). The court further held:

> [I]t is undisputed that THI placed the lower boom lift cylinder into the stream of commerce in October 1997 when it sent the cylinder to Altec. Further, it appears clear to the court that Altec used the lower boom lift cylinder for its intended purpose on January 14, 1998 when Altec performed several tests on the fully completed lift portion of the A77-T bucket truck using a test chassis (rather than the truck chassis to which the lift portion would ultimately be attached) including operating the lower boom lift cylinder and lift as it would be used in the field. Lastly, Altec ordered the lower boom lift cylinder from THI to fulfill the Georgia Power Company's A77-T bucket truck order, and Altec began the process of installing the cylinder as part of a fully functioning lift mechanism and a complete bucket truck almost as soon as it received the cylinder from THI. Altec had no intention of holding the cylinder in inventory for later re-sale. Based on this analysis, the ten-year statute of repose in O.C.G.A. § 51-1-11 began on January 14, 1998, ten years and roughly twenty-one days before Plaintiffs filed the instant suit.

(*Id.*). The court's order disposed of Plaintiffs' negligence and strict liability claims; however, Plaintiffs' failure to warn claim is not subject to the statute of repose in O.C.G.A. § 51-1-11 and is still pending before the court.

Plaintiffs contend that the court's ruling was incorrect. All of the instant motions before the court represent Plaintiffs' attempt to get the court to reverse its ruling or certify this matter for appeal. Presently, Plaintiff cannot appeal because his failure to warn claims remain before the court. On March 19, 2009, Plaintiffs filed the instant Motion for Entry of Judgment under Rule 54(b).[1] Plaintiffs asked that the court either revise its February 19,

---

[1] (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly

4

2009 Order to include a finding under Rule 54(b) that it is a final order appealable as a matter of right, or certify the order for immediate appeal. Plaintiffs insist that due to the state of Georgia appellate decisions there are substantial grounds for a difference of opinion as to whether (1) the applicable statute of repose commences before a product is fully assembled and made available to a customer, (2) manufacturers of complex products involving multiple component parts will be able to claim multiple periods of ultimate repose that will be triggered before the product leaves the possession, custody, and control of the manufacturer, and (3) a component manufacturer should have a different statute of repose than the completed product manufacturer. Plaintiff maintains that an appeal at this time would permit the Eleventh Circuit to certify questions to the Georgia Supreme Court about whether *Johnson*'s operability trigger is the appropriate trigger and whether a component manufacturer and a completed product manufacturer have the same trigger date.

---

> determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

5

On April 8, 2009, Plaintiffs filed a Motion for Leave to File Motion for Reconsideration.[2] Plaintiffs insist that the Georgia Court of Appeals recent decision in *Smith v. Chemtura*, A08A1952, 90 F.C.D.R. 1052 (3/17/09) (addressing whether plaintiffs properly pled their claims under O.C.G.A. § 51-1-11(b)(1)), provides additional clarification in this matter. Plaintiffs requested that the court allow them to file a Motion for Reconsideration at least as to Altec. On May 1, 2009, Plaintiffs filed a Motion to Amend Complaint. Plaintiffs asked the court to allow them to withdraw their failure to warn claims. If the court allows Plaintiffs to do so, no claims will remain in this matter and Plaintiffs may appeal the court's February order. Defendants do not object to Plaintiffs' request to withdraw.

The parties articulate the same arguments in all motions before the court. Relying on *Johnson* and *Davis*, Defendants insist that in cases which involve a component part, the statute of repose begins to run when the alleged defective component is placed into the stream of commerce. Relying on *Pafford* and the cases it cites from other jurisdictions as

---

[2]Local Rule 7.2(E) states:
> Motions for reconsideration shall not be filed as a matter of routine practice. Whenever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the clerk of court within ten (10) days after entry of the order or judgment. Responses shall be filed not later than ten (10) days after service of the motion. Parties and attorneys for the parties shall not file motions to reconsider the court's denial of a prior motion for reconsideration.

6

well as *Parks v. Hyundai Motor American, Inc.*, 294 Ga. App. 12 (2008), Plaintiffs argue that the statute of repose does not begin to run until the entire product is sold to the ultimate consumer. Plaintiffs maintain that if the court allows the statute of repose to begin to run when each alleged defective component part is put into use, the court will create multiple statutes of repose for any given product. Plaintiffs further reason that the court cannot allow the statute of repose to begin to run while a product is still within the control of manufacturer Altec because at this point the product has not been bought, tested, or used by any customer. Defendants contend that whether the manufacturer has control of the product is irrelevant if the product is being tested, consumed, or used. Defendants insist that Georgia case law makes no distinction as to whether the person who could have been injured by the product was an employee of the manufacturer or the ultimate consumer. Defendants further maintain that the possibility of multiple periods of repose if there are different component parts is not an issue in the case and does not serve as a basis for the court to review its order. The crux of the parties' dispute appears to boil down to how the "product" in this matter is defined. Although Plaintiffs clearly argue that the cause of the accident in question was the THI cylinder, for purposes of the statute of repose, Plaintiffs insist that the product is the bucket truck as a whole. Defendants insist that the relevant product is the cylinder and lifting device. In its order, this court found that "Plaintiff [had] allege[d] that the lower lift boom cylinder was defective. Thus, the relevant inquiry is not when the bucket truck

7

ultimately entered the stream of commerce or whether it was operating as it was intended but rather the movement and function of the lift." (Order at 8).

**II. Discussion**

The Georgia Supreme Court has not directly ruled upon the issue before this court. As such, this court, sitting in diversity, is obligated to look at the state of the Georgia case law and determine how the Georgia Supreme Court would rule were the facts of this case before it. In fulfilling its obligation, this court has extensively reviewed the Georgia case law surrounding this issue and its own order. The court finds that the issues before it today come down to a comparison between the facts in the instant matter, those in the Georgia Supreme Court's opinion in *Pafford*, and those in *Johnson* and *Parks*, the two Georgia Court of Appeals decisions following *Pafford.*

In *Pafford*, a plaintiff alleged injury from a defective metal plate placed in his back. 264 Ga. at 541. The defendant argued that the statute of repose began to run at "the first sale" or when the hospital purchased the metal plate from its manufacturer, while the plaintiff contended that the statute of repose did not begin to run until the plate was first "use[d] or consum[ed]" or when the hospital installed the plate in the plaintiff. The court found that the phrase "first sale for use or consumption" must be construed in light of the concepts of "use" and "consumption" employed in other subsections of the statutory provision. *Id*. at 542. The court noted the language in O.C.G.A. § 51-1-11(b)(1), "[t]he

8

manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property . . ." and found "by purchasing the plate for mere static retention in its inventory, the Hospital was not functioning as an active 'user or consumer' thereof, but only as 'a dealer or any other person' through whom the plate would ultimately be sold for its intended purpose or placement in the back of the patient." *Id.* at 542-43. The court emphasized that its construction of the statutory language does not create absolute liability on the manufacturer because the plaintiff still must prove the plate was defective when sold and that the defect was the cause of plaintiff's injury. *Id.* at 543. Finally, the court found that "[a]ny unfairness to defendants in requiring them to defend against unavoidably delayed actions [wa]s more than balanced by the intrinsic injustice of barring plaintiff's action before it can reasonably be brought." *Id.*

In *Johnson*, a car caught on fire damaging plaintiff's house and vehicles. Plaintiff claimed that the cause of the fire was a faulty speed control device manufactured by Texas Instruments and installed in the car by Ford Motor Company and sued both companies. 281 Ga. App.166. The court addressed whether the statute of repose began to run on the date the car was assembled and the faulty speed control installed or on the date that the car was purchased. *Id.* The court examined and distinguished *Pafford*:

> This case is factually different from *Pafford* in that the switch in question was not retained as part of Ford's inventory but was placed immediately into

9

another component and then incorporated into the Lincoln on the assembly line. The question then becomes whether, under *Pafford*, the "actual intended purpose" of the switch was not realized until the car was sold to the consumer.

In *Dorsey Trailers, Inc. v. Knight*, A00A1985, A00A1986, A00A1987, 2001 Ga. App. LEXIS 123 (Feb. 2, 2001), Prod. Liab. Rep. (CCH) P15,995 (2001) (vacated and dismissed), this Court held that an aerial lift that was sold to a dealer and was then lent to customers for trial runs was "actively placed in use" when it was sold to the dealer. This Court reasoned:

> This result serves the purposes of both the statute creating liability for defective products and the statute of repose. It serves the former by extending protection to those individuals who may be "trying out" a new product before it is purchased, and it serves the latter by limiting the manufacturer's liability to a period of ten years following the time the product is first actively used. As such, the conclusion reached herein is necessary to preserve and balance the public policy involved in these situations.

*Id.* at *10.

Following this reasoning, when the car was driven off the assembly line, the starter had been actively placed in use, was in fact being used, and did not require purchase from the end user or consumer to be used for its "intended purpose." *See Pafford*, *supra*, at 542, 448 S.E.2d 347. *See also Davis v. Brunswick Corp.*, 854 F. Supp. 1574 (N.D. Ga.1993), *overruled on other grounds*, *Lewis v. Brunswick Corp.*, 107 F.3d 1494 (11th Cir. 1997). In *Davis*, Mercury Marine sold Galaxy Boat Manufacturing Company an engine and out-drive which Galaxy installed in the hull of its boat. *Id.* at 1577. The boat was involved in an accident that plaintiffs claimed was caused because there were no guards on the propellers. The court held that the sale of the engine and out-drive to Galaxy triggered the statute of repose because that was the date the products were first placed in the stream of commerce, thus exposing Brunswick to liability. *Id.* at 1585.

*Id.* at 170-71. The court ultimately found that (1) there was no static retention in inventory,

(2) as in *Pafford* the switch was being used for its intended purpose when it was installed

10

in the car and the car came off the assembly line at the plant, and (3) there was no concern, as in *Pafford*, about the plaintiff's action being barred before it could be reasonably brought, and as such (4) the statute of repose began to run when Ford installed the switch in the car and the car became operable. *Id.* at 171. The court found that the statute of repose barred claims against both Ford and Texas Instruments.

In *Parks*, plaintiffs filed a wrongful death suit against Hyundai Motor America, Inc., and Hyundai Motor Company ("Hyundai") after their child died while riding in a Hyundai Excel. 294 Ga. App. 112. The plaintiffs maintained that the seat belt mechanism in the car was defective. *Id.* Hyundai moved for summary judgment based on the ten-year statute of repose. *Id.* at 114. The Hyundai Excel in question was assembled on October 19, 1988, and bought on January 14, 1989. *Id.* at 115. The court, citing *Pafford*, found that it was "undisputed that the ten-year repose period had expired when the [plaintiffs] filed their complaint on December 30, 1999." The court did not discuss the specific date on which the statute of repose ran.

This court finds that *Parks* provides no guidance in this matter because both the date the car was assembled and the date the car was sold placed the plaintiffs' claims outside the statute of repose. The court further finds the facts of this matter to be more closely analogous to *Johnson* than *Pafford*. The Georgia Supreme Court made its decision in *Pafford* based upon (1) the fact that the plates were in inventory making the hospital more

11

analogous to a dealer than a manufacturer, and (2) concerns that the ultimate consumer's claims might be precluded before he even came in contact with the product. Here, neither concern is present. Further, *Pafford*, unlike *Johnson*, did not involve a defective component part. The court stands by its original opinion analogizing to *Johnson.*

The court notes that neither *Johnson* nor *Pafford* directly addresses the issue of whether the statute of repose may bar a products claim against the manufacturer of the component part put not the assembled part. This court finds no support in Georgia case law for applying two different statutes of repose and, therefore, follows *Johnson* in applying the same date to both Defendants. The court recognizes, however, that there may be a difference of opinion as to this issue, and Plaintiffs are not unjustified in their desire to appeal and have another court address this matter. The court finds no basis for facilitating Plaintiffs' desire to appeal through their Motion Under Fed. R. Civ. P. 54 or Motion for Reconsideration.[3] As such, these Motions [58, 61] are DENIED. As Defendants do not

---

[3]Plaintiffs' desire to file a motion for reconsideration is untimely. Further, Plaintiffs have presented no new facts or applicable case law which make a motion for reconsideration necessary. The court finds no cause to grant Plaintiffs' motion under Rule 54. As long as Plaintiffs' failure to warn claim remains before the court there is "reason to delay."

12

object to Plaintiffs' Motion to Amend and the court can find no legal reason to disallow it,[4] the court will GRANT Plaintiffs' Motion to Amend [64]. This allows Plaintiffs to appeal.

**IT IS SO ORDERED** this 10th day of June 2009.

                                              s/ J. Owen Forrester
                                          J. OWEN FORRESTER
                    SENIOR UNITED STATES DISTRICT JUDGE

---

[4]The court should freely give leave to amend "when justice so requires," but the court "need not allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). The court finds no such circumstances here.

13